Clear for the next stage. If the lawyers are going to argue the case, please approach the bench and introduce yourself to the court. I'm Jessica Ware on behalf of the Office of the State Appellate Defender. I'm the appellant, Diane Neasom. Assistant State's Attorney, Marcy Jacobs, representing the people of the state of Illinois. As to the defense, how much time do you want for rebuttal? Five minutes. Okay. Let's proceed. May it please the Court. My name is Jessica Ware on behalf of the Office of the State Appellate Defender, and I represent the appellant, Mr. Daniel Neasom. Your Honor, today I'd like to argue the first issue from my brief, the ineffective assistance of counsel argument. There's a reasonable probability that Daniel Neasom could have been convicted of the lesser mitigated offense of second-degree murder in this case had it not been for counsel's misapprehension of the law. The evidence in this case showed that prior to Ms. Barnes' death... Let me ask you this. Wasn't this just the trial strategy here? This was kind of a weak case. This was not a sound trial strategy because counsel's strategy was based off of misapprehension of the law. Counsel asserted a feudal trial strategy. She argued that Ms. Barnes could have came through the window voluntarily and did not assert an alternative theory of second-degree murder that fit with the facts of the case, that fit with her arguments that she made at closing arguments. And this is what the judge pointed out during closing, that counsel was making arguments that was consistent with second-degree murder, that was consistent with the facts, but counsel believed that she could not assert a feudal trial strategy. She could not assert that theory because she believed that she needed direct testimony to prove second-degree murder, which is not true. All right. It's not argued here, but underlying all of this, aren't we also dealing with ethical considerations? I mean, counsel really believed, based on the record, that there was an insufficient amount of facts to establish the case, and therefore did not pursue it. So, you know, based on her belief that to do otherwise may be unethical, she proceeded to go the other route. Right, but her belief was based off of the misapprehension of the law. So the issue here is whether counsel's actions were unreasonable. And the answer to that question is yes, because she based her strategy off of misapprehension of the law. There was substantial evidence in this case to support a second-degree murder theory. There was evidence that both parties were fighting in the apartment beforehand, that Ms. Barnes stabbed Neeson three times, and that they both were intoxicated. That's the classic second-degree murder scenario. But here, counsel insisted to the court that the court could not even consider this theory in the alternative. She persisted in that based off her belief that you need direct testimony to prove the mitigating factor. But the second-degree murder statute does not require direct testimony to prove the mitigating factor. And if circumstantial evidence can be sufficient to prove an entire offense beyond a reasonable doubt, then it can prove a mitigating factor by a preponderance of the evidence. But counsel didn't realize this. So her strategy was based off of a misapprehension of the law, which makes it unreasonable. And even if you look at the context of this trial, the court three times has said that it's unreasonable. The court three times interrupted counsel's closing argument and asked her, are you sure you don't want me to consider second-degree murder in this case? Because her argument seemed consistent with second-degree murder. She was arguing that the decedent attacked Mr. Neeson, that there had been a fight, that she stabbed him. And so the court three times interrupts her and says, well, you don't want me to consider second-degree in the alternative? And she insists, no, I can't ethically ask for this finding here, because I need direct testimony. And that was clearly erroneous. And so in this case, as I said earlier, there was circumstantial evidence that would have supported a second-degree murder theory under either serious provocation by mutual combat, serious provocation by substantial physical injury or assault, or unreasonable belief in self-defense. There was physical evidence that the decedent stabbed Mr. Neeson three times in the leg prior to her death. The medical examiner testified that the blood on the knife found in the apartment had the decedent's blood on it, which you would not expect if she wasn't the one handling the knife. Let me just stop you for a moment. Let me just ask you this one question. Sure. The defendant didn't testify in this case. Correct. And if there would be a theory of a second-degree murder, wouldn't the defendant have had to testify? Well, he didn't have to testify. How could you show second-degree murder if he didn't testify? Right. How do you show the provocation? Well, in this case, the circumstantial evidence showed provocation. And we have to remember that on appeal, we don't have to show that he could have proven second-degree murder. We only have to show if there's a reasonable probability that these facts could have proven second-degree murder. And when you have evidence that he's been stabbed by the victim, now, that's physical evidence. That's physical evidence from the medical examiner, unbiased witness. When you have evidence that he was stabbed. There's no evidence that he was stabbed by the deceased. That's what the medical examiner testified. It was her professional opinion that the deceased was the one who stabbed him because her blood was on the handle of the knife, which you would not expect if she was not the one using it. That was the medical examiner's testimony. So there was testimony on the record that the judge could have believed by a preponderance of the evidence sufficient to prove the mitigating factor in this case. And not only that, not only the medical examiner's opinion and the stab wounds, but also the apartment. When the police came in the apartment, they said it was in complete disarray. It looked like there had been a fight. And that's the classic second-degree murder scenario, intoxication, fighting, and, you know, that type of thing. And one of the cases I cited, People v. Stowers, the court found that the defendant was sufficiently provoked by a mere laceration to his head. That that was enough of a substantial physical injury or assault by the victim to provoke him to cast a two-second-degree murder. So if a mere laceration to the head can be provocation, then certainly three-stab wounds to the thigh can be sufficient provocation. But counsel had all of this circumstantial evidence, but she ignored it because she believed that she needed direct testimony. And in this case, given the prosecutor's opening statement concedes all of these facts that are necessary for a second-degree murder. The prosecutor's opening statement was, During the course of the evening, when the two individuals had been partying or using narcotics, there came a time when there was a fight between the defendant and the victim, Cynthia. During the course of that fight, Cynthia used a knife to stab the defendant in the leg. The state conceded that there was a fight over drugs. She stabbed him in the leg. And so in this case, where you have the judge continually prodding an attorney to give him the option to find your client guilty of a lesser offense, the counsel is operating under a misapprehension of the law the entire time. I mean, the court even goes so. So the court did, on three separate occasions, address counsel with the facts. But the court also gave counsel an opportunity and it took a recess. And based on the record, it appears that counsel talked to the defendant and also did some research in this matter as well. So, I mean, it's not like counsel went straight ahead and didn't, you know, abide by, you know, any advice or didn't look up the law. But again, counsel felt that this was a sound strategy to proceed in this case. So if it is a sound trial strategy, you know, this court has said, you know, if you decide to go full force ahead with the trial strategy, so be it. You know, it's not error. But the strategy cannot be an unsound strategy. When your strategy is based off of the misapprehension of the evidence, and you have to remember, second-degree murder would have exposed her client to no additional liability that he could have otherwise avoided without the instruction. Because second-degree murder is a lesser-mitigated offense. It is not a lesser-included offense. So the judge could have only found Mr. Neeson guilty of second-degree murder if he had already found him guilty of first-degree murder. So it would have been a win-win situation. It was merely providing the court with an alternative option of finding her client guilty of something lesser, if the court had already found him guilty of first-degree murder. And in this scenario, when you have this feudal trial strategy that the victim came out of the window voluntarily, and you insist that the court not even consider an alternative theory that fit with the evidence, that fit with counsel's arguments, and you have the court giving us a tenuous to this attorney, telling the attorney, if you want to come back and change your theory, I'm open to that. If you want to give a new person's argument, I'm open to that. All of this nudging, all of this prodding, but yet counsel insists that she doesn't have enough because she needs direct testimony of a mitigating factor. And that is not true. There is no authority that the state has cited that shows that she needs direct testimony to prove a mitigating factor by a preponderance of the evidence. There is no authority for that. In this case, this defendant was found guilty based on basically just circumstantial evidence, would you agree to that? Correct. But yet in your public brief, you're not arguing sufficiency of the evidence. Why is that? Because the argument here is that, I'm not disputing that no reasonable trial fact couldn't have found him guilty under these facts. Okay, I'm not disputing that at all. But the only issue here is whether there's a reasonable probability that he could have been found guilty of second degree murder here. And in this case, these are classic second degree murder facts, Your Honor. And we have to remember, Your Honor, that even the court in making its findings explained just how improbable counsel's chosen theory was, just how it made no sense. The court said she was held for about 10 seconds and there is no way this woman is going to maneuver herself like some kind of circus performer for that period of time, hanging by a thread. She was hanging by her toes of her own volition or even recklessly. The only way she could have gotten there is if somebody pushed her through the window and the only person up there was Daniel Neeson. So the court even commented just on how the defense counsel's theory, chosen theory, made no sense. And she rejected an alternative theory that made a lot of sense, that would have fit with the evidence, fit with her arguments, Your Honor. But she had this misapprehension of the law. And that's key here, is that she misapprehended the law. When you're considering if she's an effective or not, you have to remember that her decision-making through this trial is based off a misapprehension of the law. She did not know the law. And if you look at the motion to reconsider ruling, she basically admits that she misapprehended the law at trial. Because at trial, she says, you need direct testimony to prove the mitigating factor. But then after the trial and the motion to reconsider the ruling, she realizes that she could have proved it by circumstantial evidence in the case. So that right there shows that during the trial, she had to have been misapprehending the law. The discussion that the defense counsel had with the court with regards to second degree went when counsel stated that you don't even get to second degree until they prove first degree. So it appears during that discussion with the court, the counsel's strategy was still was, in order to get to second, you've got to prove first. And based on the facts that were presented at that time, counsel didn't believe that the state was even going to be able to prove first degree murder here. Right, but even if she didn't, she could have still offered second degree murder as an alternative theory. I'm just talking about in terms of her, isn't that trial strategy? If that was her strategy, it was not sound, because the overwhelming evidence did not, the evidence did not support that theory. And the court's findings explicitly explain why. Her theory was based on basically nothing. And the alternative theory would have cost the client, it would have been no risk at all. It would have been no risk at all for her to pursue second degree murder, say, hey, to the court, you know, if you do not believe my argument, that my client is not responsible for her death, if you don't believe that, you believe he's responsible for my death, then the alternative, he's guilty of second degree murder. This was a bench trial. The judge would have been perfectly capable of considering alternative theories. This was not a jury trial where you can confuse a jury by arguing two different things. This was a bench trial. And this was a bench trial in which the court was plotting her to do that anyway. And I think that at the point where the judge continues the case and tells her if she wants to do a new closing argument, at that point, her actions are completely unreasonable in insisting on not giving the judge this alternative option. If her conduct was reasonable during the trial, it certainly was not reasonable by the time the judge gives her the continuance and basically tells her to think about it and come back. So at that point, Your Honor, no reasonable attorney would not have given the judge the option to find a client guilty of a lesser offense, especially with a lesser mitigated offense, which exposes the client to no risk of being convicted of something that they could have avoided being, you know, convicted of anything otherwise, Your Honor. And Meese was prejudiced by counsel's actions. I believe that the court's conduct shows that there's a reasonable probability that this judge would have found Mr. Neeson guilty of second-degree murder had counsel not insisted that he could not consider it at all. If you look at the court's findings, the court said in finding Mr. Neeson guilty, whatever happened in this case, since I'm being told not to consider any provocation or self-defense, then the court goes on and says he's guilty of first-degree murder. I mean, the reasonable probability can be significantly less than 50 percent. That's what the case law says. And here we have a judge who's open to considering the theory, and then in his findings says, since I can't consider the theory, he's guilty of first-degree murder. There's a reasonable probability here of a different outcome had not counsel insisted that the judge could not consider second-degree murder in this case. So if this court has no further questions, I'll say the rest. Good morning, Your Honors. Marcy Jacobs, Assistant State's Attorney. There are four main reasons why you should affirm this case. I'll state them briefly and then go into each one in detail. Counsel's all-or-nothing strategy was absolutely valid. There was no evidence of mitigating circumstances in this case. The trial court found no mitigating circumstances based on the evidence in the record, not because of what trial counsel argued. And the defendant clearly agreed with the all-or-nothing strategy and so should not be able to complain about it now on appeal. So as this court well knows, an all-or-nothing strategy is a valid and viable strategy. It is virtually unchallengeable, even if it is unsuccessful, even if in hindsight appellate counsel thinks arguing mitigating circumstances would have been better, and even if there was actually evidence of second-degree murder in the case of the legal strategy. Now, you're arguing that the trial court and the trial judge was bribing counsel. I completely disagree with that. Oh, I'm sorry. I disagree with the characterization of prodding. He was not prodding her. He was not pointing out she should use this. He was trying to simply understand her argument. And he said, quote, like six or seven times, and I'll quote a couple of them, I made inquiry because I wanted to make sure I understood what her position was. The court wanted to make sure it had clarity on exactly what she was arguing. I wanted to make sure I understood exactly what she was arguing. Understanding is different than prodding, because let me point out, he asked her a lot of questions during the course of that argument, not just about the second-degree issue. He asked her questions about her theory that the victim went out a different window than the state's theory was. And he asked her all about that, and he was asking questions. He wanted to understand her theory. What did it mean? That in no way meant, and in fact what I thought it showed, was that he had awareness, complete awareness, that regardless of what she argued, he certainly knew that this option was available to him, and he wanted to understand what she was arguing, and that is not to convert a question about understanding into actually finding facts in the evidence that support it. So getting back to that, so here counsel defendant now argues, she recognizes that the only way this all-or-nothing, virtually unchallengeable strategy could rise to the level of first-pronged strickling is if she did have a misapprehension of the law. But the record does not throw that out. Her only argument is that defendant cannot show this based on a false premise that she didn't understand circumstantial evidence could provide evidence as far as mitigating circumstances. That's not what the record shows. The record shows the disconnect here is that defendant doesn't understand the difference between reasonable inferences based on circumstantial evidence and pure speculation.  Based on a condition of the apartment, based on the injuries on both defendant and the victim. And counsel argued that all day long. There was a fight. She argued that the inference from the DNA on the knife was that the victim stabbed the defendant. So she understood circumstantial argument. What she didn't, what she correctly argued though, what she correctly recognized, is that the context and circumstances of the fight was pure speculation. The timing of it. Who started it? Was it mutual? Or was one party in a purely defensive posture? What was defendant thinking? What was his motivation? So the fact that there's bare bones evidence of a fight does not provide that link that you then need to show that this fight had anything to do with the events of what caused the death of the victim in this case. You need the circumstances of the fight to fill out that link. And so she correctly argued. She said this. There is circumstantial evidence of a stabbing. She knew about circumstantial evidence. How that came to be, we don't know. We have no idea because there's no testimony of that. We would have to speculate. And she also correctly argued that all of the cases she found, there was some testimony about a fight, a struggle, mutual combat. And indeed, every single solitary case defendant cites in his appellate brief, without exception, has testimony, not only by defendant, either by defendant or by defendant and witnesses, to provide the context of a fight that happened before to establish or not establish a link to the events that led to the death. And you need the circumstances and context of the fight to establish both provocation and unreasonable self-defense for mutual combat. You need to know that both parties entered the fight willingly, that it was on equal terms, that you need to know whether or not there was a cooling off period. And for unreasonable self-defense, you need to know the defendant was motivated by fear, that he felt he was in a defensive posture. And even if the victim did attack the defendant, you still need to know if she was disarmed or disabled, then he doesn't get to use deadly force on her. And all of that is pure speculation. So frankly, this is a situation where there's no witnesses. So defendant's testimony, although of course he has every right not to testify, and he has every right not to put on any evidence, but if he wants to go with a mitigation strategy, it's his burden to show that one existed. And here that could have only been done with his testimony. So far from not understanding the concept of reasonable inferences from circumstantial evidence, she absolutely understood the concept. But moreover, as Justice Ray, as you alluded to, she invoked her ethical and her legal duty as an officer of the court in this case. She said, as an officer of the court, I cannot in good faith stand before Your Honor and argue for second degree, because to do so, I would have to create a story. And we know that she said this after she concurred with her client. So of course those conversations are privileged, but they certainly played a role in her decision-making. And her affirmative statement based on ethical considerations must be given deference, especially where the record shows nothing to dispute them. And I would also take the opportunity to point out that the first attorney in this case, who also filed an answer to discovery, because this attorney came on after the other attorney left the courtroom, the first attorney also filed an answer to discovery and did not advance a second degree theory, also presumably after conferring with the client. So even so, I want to point out that, as you well know, when you evaluate a counsel's performance, you look at the whole record. There is no more effective counsel than I can say in this case. This counsel went out and got the medical examiner to change her manner of death from homicide to undetermined. And the fact that she managed to get her to do that allowed her, allowed counsel, to then make this amazing argument for reasonable doubt. And because of her efforts, because of her very diligent efforts on behalf of this client, she was able to make this unreasonable... The issue here, was this a sound legal strategy? Well, again, the only way that we can look at... The only way you can find it's not sound is if there is a misapprehension of law. The record does not show that this counsel misapprehended law. So you don't get to it. At that point, all or nothing, as this court well knows, is a valid strategy. And in this case, it certainly was. So she was able to argue this reasonable doubt theory. And as this court knows, counsel is not ineffective simply because she did not find it a weak proof theory, a theory of innocence. But regardless of what she argued, based on her ethical considerations, and based on what she actually knew is not on the record, she knew that the trial court had full discretion to find litigating circumstances sui sponte, even if she didn't argue it. Let me interrupt here. The court's finding at the end, counsel wanted us to infer that it was a message, a message to the appellate court, that I am finding him guilty even though I'm not asked to consider the following factors. Alright? In terms of self-defense, etc. Alright? So can we infer from the trial court that when the trial court is saying I'm finding him guilty of first-degree murder even though I'm being asked. You know, that's one thing he said and I don't think that was exactly word-for-word. But here's some other things he also said about his finding. He said, I have a woman coming out of a window under circumstances that can only be explained by first-degree murder based on the evidence heard. He also noted evidentiary challenges to both sides but I can understand what happened that day and it is indeed first-degree murder. So while because she didn't ask for second-degree findings he probably didn't have to go through why he didn't find that evidence on the record he made it very clear this was first-degree murder based on the evidence in the record. And ultimately let me point out that she also she did argue it in her motion to reconsider. So where the where the where she where the defendant cannot show that this counsel was deficient that there was no misapprehension she understood the concept of circumstantial evidence she just also understood that there was a difference between reasonable influences and pure speculation but there was no prejudice in this case because the trial court made it clear he would have found first-degree anyway but I also do want to point out something that cannot be ignored this record clearly suggests that the defendant agreed with the strategy and now he is doing nothing more than asking for a second bite of the apple which he should not be at all completely precluded from raising this claim on appeal he went with the strategy it didn't work it's unsuccessful now he wants to claim his counsel was wrong for pursuing the strategy clearly he agreed with where specifically in the record can we determine that he agreed with the strategy well the law says that if she's asked she was asked directly many times is this your strategy he sat silently after they took a week to confer and she said yes based on my conferring with my client this is the strategy he sat silently and the case law says that shows that he is back with the strategy and should not even be allowed to then complain about it on appeal based on that this counsel should be commended for her ethical and diligent efforts on behalf of this client and not condemned for choosing to pursue a basis claim and we are asking this court to please affirm defendant's conviction the state mentions that the trial attorney should have been commended for her theory and that her theory was sound but in the state's own brief at page 20 the state concedes essentially that her theory that the victim came out of the window voluntarily made no sense and I quote the state says the only logical inferences that could have been made based on the evidence presented at trial is that the defendant pushed her out the window that's what the state said and I want to mention a few other things the state mentioned that it's clear that the defendant agreed with the strategy this was not defendant's choice the choice rather to proceed with a second degree murder to find the defendant guilty of second degree murder that was the judge's choice the judge generally has a he can find the defendant guilty of second degree murder on his own but in this case the judge was deferring to counsel so counsel has to make the strategic decisions counsel has to recognize there's nothing to lose here if he's going to get convicted of second degree murder it's going to be because he was already convicted of first degree murder that's counsel's that's counsel's responsibility to understand that are you telling us that the judge could not have found second degree murder the judge could have but in this case he explicitly said that he was going to honor counsel's wishes he said since I'm being told not to consider it he's guilty of first degree murder and in this case your honors for the state to say that there's no way that the judge could have found this client guilty of second degree murder it's inexplicable why the judge would be offering counsel the opportunity to advance that theory the judge goes out of his way to offer counsel the opportunity to advance that theory and the judge is presumed to know the law so if the judge would have thought that this theory had no chance why would the judge continually ask the judge was throwing him a softball there's no question about it your honors the circumstantial evidence supported this theory and the judge recognized it the judge recognized it throughout closing arguments went to great lengths to try to get counsel to give him that second option your honors and also the state mentioned that the court was not prodding counsel ok maybe during closing arguments the first couple questions the judge was just trying to understand hey what's your argument here you're saying she attacked him you're saying there was a fight but you're not asserting second degree murder maybe the first couple questions the judge was trying to understand but by the time the judge allowed for continuance the judge understood the argument full well he was prodding counsel he was giving counsel the opportunity to change her theory at that point so obviously the judge thought that this theory was viable also the state mentioned that the first attorney did not advance a second degree murder theory in discovery or anything like that regardless of what was asserted in the discovery documents at the point of closing arguments the judge is not asking about discovery he doesn't care what's in the discovery he's giving counsel the opportunity right then and there at the end of this trial to have her client have this alternative option of finding him guilty of a lesser offense he's giving that to her at the end of trial regardless of the fact that nobody's asserted it in discovery so at that point that's when we have to look at counsel's actions we have to look at counsel's actions within the context of that decision that she made right then and there when the court is prodding her when the court is giving her the opportunity to give him the second option that is of no risk at all to the client but counsel's misapprehension of the law is what caused her to make the wrong decision so if this court has no further questions we ask this court to reverse the remandis clause for a new trial thank you very much for giving us a very interesting case and both of you did a wonderful job in your presentation and in your briefs we'll take this case under advisement